No. 43,006

JAYHAWK EQUIPMENT COMPANY, a corporation, *Appellant*, v. WILMA A. MENTZER, *Appellee*.

(379 P. 2d 342)

Opinion filed March 2, 1963.

*William R. Stewart*, of Topeka, argued the cause, and *T. M. Murrell* and *George A. Scott*, both of Topeka, were with him on the brief for the appellant.

*Hal C. Davis*, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action in the nature of a judgment creditor's bill to set aside a conveyance, or in the alternative, to

impress an equitable lien upon the real estate. Upon stipulations of the parties at a pretrial conference the trial judge held the action was barred by the doctrine of *res judicata.*

The determinative question presented on appeal is whether the trial court erred in holding that the action was barred by the doctrine of *res judicata.*

An understanding of the issues presented by the pleadings may be simplified by stating the chronological sequence of events leading up to this action as set forth in the various pleadings.

On the 19th day of September, 1960, the Jayhawk Equipment Company, a corporation (appellant) filed an action in the district court of Shawnee County, Kansas (Case No. 87,658) and alleged in substance that in May, 1959, it had sold equipment to Delbert Mentzer and Wilma A. Mentzer (appellee) husband and wife, d/b/a Lariet Drive-In, and that the sum of $3,463.83 plus interest was due Jayhawk *by both defendants.*

While the above action was pending, Wilma on the 28th day of November, 1960, filed an action for divorce against Delbert (Case No. 88,111) in the district court of Shawnee County, Kansas.

On the 29th day of November, 1960, Delbert made a voluntary entry of appearance in the above divorce action.

On the 30th day of November, 1960, Wilma and Delbert entered into a written property settlement agreement wherein Delbert set over to Wilma as her separate property, free and clear of any and all claims, "All of the right, title and interest in and to the real estate and building known as Lariet Drive-In at 29th and California Avenue, Topeka, Kansas," (the property which is the subject of this litigation) among other property.

On the 1st day of December, 1960, Wilma made an application for an order declaring an emergency in the divorce action. In this application she set forth that in the early part of 1959 Delbert purchased the ground and built a drive-in restaurant, which was furnished with restaurant equipment, at 29th and California Streets in Topeka, Kansas; that as a result of the purchase of the equipment a disagreement arose with the Jayhawk Equipment Company; that she attempted to assist Delbert in the operation of the drive-in, but the operation was not successful financially, and in August, 1959, Delbert became quite disturbed and upset over the parties' debts and obligations. Wilma further stated in the application she had to close the drive-in; that a legal action was pending in the Fourth Division of Shawnee County against herself and Del-

bert; that Delbert needed medical attention and was going to Winter General Veterans Hospital for treatment, and "that something immediately must be done concerning the sale and disposition of the drive-in and its equipment or this property will be lost."

As a result of the foregoing application the district court on the 1st day of December, 1960, entered an order for emergency, and on the same date heard the divorce action and granted Wilma a divorce. In the decree Wilma was awarded property as follows: "All of the right, title and interest of the parties in and to the personal and real property set forth in said property settlement and defendant is barred from claiming any interest in and to said real and personal property and plaintiff is specifically awarded all of the right, title and interest in and to the building and real estate as decribed in said property settlement as the Lariet Drive-In at 29th and California Streets, Topeka, Kansas."

The foregoing divorce proceedings were commenced and concluded during the pendency of the action filed by Jayhawk on September 19, 1960. In Jayhawk's action against Delbert and Wilma the district court on the 9th day of November, 1960, sustained a motion to make definite and certain filed by Wilma. Thereafter on the 28th day of February, 1961, Jayhawk filed an amended petition which did not in substance change the allegations of the original petition.

Wilma, on the 31st day of March, 1961, filed her separate answer to Jayhawk's action, specifically denying that she contracted with or requested Jayhawk to furnish any equipment or materials for the drive-in; and further denying that she was in the business of operating the drive-in, but alleged on the contrary that any arrangements and purchases made at the drive-in were made by Delbert; and that she had no interest of any kind in the drive-in, other than as the wife of Delbert.

Issues were joined by the reply on the 19th day of April, 1961, and the case was tried the 27th day of April, 1961, at which time judgment was entered for Jayhawk against Delbert for the full amount sought. The trial court found, however, that Wilma was not a partner of Delbert in the operation of the drive-in restaurant, and was not a party to the contract of purchase of the equipment involved in the action. And while the trial court overruled the demurrer of Wilma to the evidence, it entered judgment in her favor against Jayhawk.

On the 3rd day of May, 1961, the action presently before this court on appeal was filed by Jayhawk against Wilma requesting "that the property settlement agreement entered into between Wilma A. Mentzer and Delbert Mentzer whereby Delbert Mentzer conveyed all of his interest in and to the building and real property hereinbefore described and the divorce decree approving said agreement be declared null and void or that plaintiff's judgment set out herein be declared as a lien upon the real property and premises hereinbefore set out and described, and for such other relief as is just and equitable."

The petition alleged in substance the foregoing facts; that Delbert was wholly insolvent; that at the time Wilma filed the divorce action she and Delbert were fully aware of the pending action between Jayhawk and Delbert and herself; and that the pending action was for money due on equipment installed in the drive-in. It further alleged that Wilma was well aware that the transfer left Delbert wholly insolvent and with no means or property to satisfy Jayhawk as a creditor; that the property settlement agreement was a conveyance made without consideration and for the purpose of hindering and defrauding Jayhawk as a creditor of Delbert, as Wilma then knew; and that the reasonable value of the property described as the Lariet Drive-In was approximately $17,000. It alleged:

"11. That said property settlement agreement was a scheme and device to fraudulently take and dispose of the property herein described to the detriment of the plaintiff herein and that plaintiff has no remedy at law."

Wilma in her answer alleged the action was barred by the doctrine of *res judicata.* She set forth the essential facts regarding the divorce proceedings and the property settlement agreement; and that Jayhawk subsequently filed an amended petition in this action, when Jayhawk in fact "knew that a divorce had been granted approximately three months previous to this answering defendant." The answer further alleged:

"This answering defendant further alleges that all matters now alleged in the present action pending could have been alleged and litigated in said previous action being case No. 87658 and by reason of said plaintiff failing to so allege said matters that this present action is barred by the doctrine of res judicata as all matters presented in this present action are between identical parties and by reason of judgment being rendered for defendant in said previous action, No. 87658, that this present action should be dismissed."

In the event the defense of *res judicata* was not sustained, the answer further alleged that Wilma and Delbert were divorced, and she was awarded all of the interest of Delbert to the Lariet Drive-In, but that she was the owner of an undivided one-half interest in and to said real estate prior to any and all actions filed by Jayhawk against her or Delbert. The answer further denied that the property settlement was a scheme or device to fraudulently take or dispose of the real property without consideration.

Issues were traversed and the case presented to the trial court on the 20th day of October, 1961, at which time the parties stipulated that all evidence of a documentary nature, being the court files which contained all pleadings and papers in the above cases heretofore mentioned, could be considered by the court in ruling upon the issue as to whether Jayhawk's action was barred by the doctrine of *res judicata*. The trial court took the ruling under advisement requesting the parties to present *pretrial briefs*, after which, on the 7th day of December, 1961, the court found that the action herein was barred by the doctrine of *res judicata*.

Although the parties in their briefs suggest many legal questions, the point determinative of this appeal is whether the issues presented by the pleadings in this action are *res judicata*, when considered in view of the documentary evidence which has been stipulated. It should be noted this was a *pretrial order* of the district court which dismissed the appellant's action. Other evidence which the appellant may have was never introduced or presented in the trial court.

The doctrine of *res judicata* is plain and intelligible, and amounts simply to this—that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal cannot afterwards be litigated by a new proceeding, either before the same or any other tribunal.

It is a general rule of law, indeed an elementary one in this jurisdiction, that in a lawsuit between litigants in their ordinary capacity, so far as relates to a subsequent action on the same claim, not only is everything adjudicated between them which the parties may properly choose to litigate, but also everything incidental thereto which could have been litigated under the facts which gave rise to the cause of action. (*Snehoda v. National Bank*, 115 Kan. 836, 840, 224 Pac. 914; *Fletcher v. Kellogg*, 125 Kan. 330, 263 Pac. 1048; *Kearny County Bank v. Nunn*, 156 Kan. 563, 134 P. 2d 635; and authorities cited in these decisions.)

In *Gray v. Johnson,* 150 Kan. 276, 92 P. 2d 46, it was said:

"Few, if any, courts have gone further than this court in applying the doctrine of *res judicata.* It has been said repeatedly that a judgment entered in a prior action between the same parties who are litigants in a subsequent action and involving the same essential cause of action determines not only the matters formally stated as determined by the judgment, but all questions directly involved in the controversy which might have been raised in the prior action. . . ." (p. 279.)

Aside from other elements entitled to consideration under the doctrine of *res judicata,* we must first determine whether or not the issues in the present action *could have been litigated* in the former action.

In the former case the issue was whether or not either or both of the defendants, Delbert and Wilma, were indebted to Jayhawk for goods and merchandise received. The issue in the present case is whether or not Jayhawk is entitled to an equitable lien on the described property which was conveyed by the judgment debtor, while an action against him was pending but before the judgment was obtained.

A short approach as to whether the issue in this action could have been litigated in the former action is to determine whether the two causes of action could have been joined.

On the subject of misjoinder it was said in *Springer v. O'Brien,* 164 Kan. 461, 190 P. 2d 341:

". . . As the decisions above noted indicate, generally inconsistent causes of action cannot be united and from those decisions it may be deduced that the main test of inconsistency is repugnancy and contradictoriness, as distinguished from the statement in the form of different causes of what is essentially only one cause of action, and that whether there is repugnancy or contradictoriness is determined by the general test, *does proof of one cause disprove the other.*" (pp. 464, 465.) (Emphasis added.)

Had Jayhawk in the former action requested the court to set aside the conveyance to Wilma, it would have had to prove Wilma was not bound upon the purchase contract in the case then pending. Jayhawk had already alleged that Wilma was bound along with Delbert, her husband. The appellee herein recognizes this fact in her brief when she says: "If appellant had been successful in that case and had obtained judgment against Wilma Mentzer, then of course this divorce and property settlement would not have been material because Wilma Mentzer, being the owner of the property, would have been liable for plaintiff's judgment and a levy could have been made upon the real estate in question and restaurant equipment."

An attempt to prove that Wilma was liable on the contract in the one cause would necessarily repudiate the requirement that Jayhawk disprove Wilma's liability in the other. The two causes of action are thus repugnant. Proof on one cause of action would necessarily disprove the other cause. A clear case of misjoinder would thus have been encountered. We think it clear that the issue presented by the instant action could not have been litigated in the former, and this action is not *res judicata*.

Grounds for recovery in an action are not inconsistent with each other when one does not defeat the other, and the truth of one does not disprove the truth of the other. (*Ondrasek v. Ondrasek*, 172 Kan. 100, 103, 238 P. 2d 535; and cases cited therein.)

In conclusion we hold the trial court erred in dismissing the appellant's action on the ground that it was barred by the doctrine of *res judicata*. Our decision is limited solely to this point and should not be construed as going any further.

The judgment of the lower court is reversed.