NOT DESIGNATED FOR PUBLICATION

No. 112,788

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN DAVIS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed December 11, 2015. Affirmed.

*Craig A. Lubow*, of Kansas City, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., GARDNER, J., and JOHNSON, S.J.


*Per Curiam*:  John Davis appeals the summary denial of his K.S.A. 60-1507 motion. On appeal, Davis argues that he was entitled to an evidentiary hearing on his motion based on his allegations of ineffective assistance of trial counsel, sentencing counsel, and appellate counsel. Davis requests that this court remand his case to the trial court for a full evidentiary hearing on his K.S.A. 60-1507 motion. Nevertheless, there are significant problems with Davis' arguments on appeal. As a result, we affirm the trial court's summary denial of Davis' K.S.A. 60-1507 motion.

1

In Davis' direct appeal, *State v. Davis*, No. 104,956, 2012 WL 2148167, at *1-2 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1132 (2013), this court summarized the underlying facts of Davis' case as follows:

"On June 25, 2009, L.C., a sixteen-year-old foster girl, was taken to respite care at the apartment of Brenda Davis in Kansas City, Kansas. At that time, L.C.'s permanent foster parent was Pamela Brown. Brenda provided respite care for foster children, meaning that she supervised children who couldn't be left alone while their foster parents were working. L.C. spent the day at Brenda's apartment napping, running errands with Brenda, and walking to a nearby park alone. After L.C. returned from the park, Brenda told L.C. she was going to visit her cousin who lived in a different apartment in the same building. During this visit, L.C. watched television in a bedroom in Brenda's apartment with bunk beds and a bathroom. L.C. didn't remember seeing anyone else in the apartment during this time.

"In the late afternoon, while L.C. was watching television, a man L.C. had never seen before entered the room. L.C. described him as 5-foot, 4-inches tall with 'really dark' skin, salt-and-pepper hair, sideburns, and a mustache that hooked into a beard. The man was wearing a white tank top and beige pants. He asked L.C. what movies she liked to watch. The man briefly left the room and then came back. He then pulled down his pants and rubbed his penis on L.C.'s mouth. According to L.C, the man forced his penis into her mouth until she gagged and the man then placed her left hand on his testicles and said, '[Y]ou got a lot to learn 'cause men like their balls rubbed.' L.C. testified that she was scared and 'fr[oze] up.' L.C. then pushed the man back. The man asked L.C., '[D]o you eat cum?' and L.C. responded, '[N]o,' and, '[T]hat's nasty.' L.C. said the man then went to the bathroom and ejaculated into the toilet. L.C. left the room as the man asked her if she had a condom; she said the man also told L.C. that if she told anybody, he would find her. L.C. ran outside to wait for Brown to pick her up.

"Brown picked up L.C. at approximately 5:30 p.m. Initially, L.C. was quiet and somber. But later that evening, L.C. came to Brown in hysterics and begged Brown not to take her back to Brenda's apartment. At first, L.C. refused to explain why because she was worried that 'he'll find me.' But eventually L.C. told Brown about the events described above. Brown immediately contacted the foster-care agency [the Kaw Valley Center (KVC)] and the police. Police officers observed that L.C.'s story remained

consistent throughout multiple interviews with different officers—even when officers deliberately misstated L.C.'s allegations, L.C. would correct them.

. . . .

"Later that night, officers located John Davis—Brenda's cousin—in the apartment's parking lot and took him into custody. His underwear, a pair of bluish-gray boxers, matched L.C.'s description. The officers created a photo lineup that included Davis. L.C. picked him out of the lineup without hesitation.

"At a 2-day jury trial beginning December 7, 2009, L.C., Brown, Brenda, and various officers testified to the facts described above. Davis denied making any sexual overtures or having any sexual relationship with L.C. He testified that he was in and out of Brenda's apartment on the day in question, but he only briefly spoke to L.C. about school and was never alone with L.C. or outside of Brenda's earshot. Davis speculated that L.C., could have known the color of his underwear if she had seen him sleeping in the apartment.

. . . .

"The jury found Davis guilty of aggravated criminal sodomy."

Following his conviction but before sentencing, Davis moved pro se for a new trial. In this motion, Davis alleged that his trial attorney, Philip Sedgwick, provided ineffective assistance of counsel. Based on Davis' motion, Sedgwick moved to withdraw as Davis' counsel. The trial court allowed Sedgwick to withdraw. The trial court appointed Joshua Allen to represent Davis on his motion for new trial and at sentencing.

The trial court held a hearing on Davis' new trial motion alleging ineffective assistance of counsel. At the hearing, both Davis and Sedgwick testified. The trial court denied Davis' motion, stating that Davis' arguments "fail[ed] in all respects."

The trial court sentenced Davis to 155 months' imprisonment.

Next, Davis appealed to this court. After Davis filed his notice of appeal, the trial court allowed Allen to withdraw as Davis' counsel. Shawn Minihan, an appellate defender, was appointed to represent Davis in his appeal.

In Davis' direct appeal, he argued that the trial court erred when it denied his motion for new trial because Sedgwick was ineffective. Davis asserted that Sedgwick was ineffective for failing to subpoena certain persons as witnesses, for failing to argue that his jail wristband should have been removed during his trial, for failing to obtain his preliminary hearing transcript in a timely manner, and for failing to give him copies of discovery. *Davis*, 2012 WL 2148167, at *4-6. This court rejected Davis' arguments and affirmed. *Davis*, 2012 WL 2148167, at *7.

In January 2013, Davis moved pro se under K.S.A. 60-1507, arguing that both Allen and Minihan provided ineffective assistance of counsel. Regarding Allen, Davis argued that Allen was unprepared at the hearing on his motion for new trial and failed to provide the trial court with mitigating evidence at his sentencing hearing. Davis further argued that Allen was ineffective because he failed to request L.C.'s therapy records or request that L.C. undergo a psychiatric evaluation. Davis asserted that Allen should have taken these actions because at his trial, L.C. testified that she had been in therapy before the alleged sodomy occurred. Because L.C. had been in therapy, Davis argued that L.C. was mentally ill.

Regarding Minihan, Davis asserted that Minihan was ineffective because Minihan should have raised the preceding arguments as to why Allen was ineffective in his direct appeal. Davis also asserted that Minihan was ineffective because he failed to argue that the State committed a *Brady* violation by failing to turn over evidence that L.C. was in therapy. See *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

4

The trial court denied Davis' K.S.A. 60-1507 motion, stating: "A review of the files and records of the case shows conclusively that the movant is entitled to no relief. A 60-1507 motion may not be used as a substitute for a second appeal, and there are no exceptional circumstances that exist. Movant's petition is denied and dismissed."

*Did the Trial Court Err by Summarily Denying Davis' K.S.A. 60-1507 Motion?*

"The right to effective assistance of counsel arises from the Sixth Amendment to the United States Constitution, which guarantees in 'all criminal prosecutions' that 'the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'" *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012). To establish ineffective assistance of counsel, the defendant must prove that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Edgar*, 294 Kan. at 837. To establish that counsel's performance was deficient, a defendant must prove that counsel's performance fell below an objective standard of reasonableness. *Miller v. State*, 298 Kan. 921, 930-31, 318 P.3d 155 (2014). To establish that counsel's deficient performance prejudiced the defense, a defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Miller*, 298 Kan. at 930-31, 934.

Summary denial of a K.S.A. 60-1507 motion is proper when the motion, files, and the records of a case conclusively show that the movant is not entitled to relief. *Edgar*, 294 Kan. at 836 (citing *Trotter v. State,* 288 Kan. 112, 132, 200 P.3d 1236 [2009]; *Bellamy v. State,* 285 Kan. 346, 353, 172 P.3d 10 [2007]). When the trial court summarily denies a K.S.A. 60-1507 motion without appointing counsel or conducting an evidentiary hearing, an appellate court reviews the trial court's decision de novo. *Edgar*, 294 Kan. at 836.

On appeal, Davis argues that the trial court erred when it summarily denied his K.S.A. 60-1507 motion because his trial counsel, Sedgwick, and his sentencing counsel, Allen, both provided ineffective assistance of counsel. First, Davis asserts that both Sedgwick and Allen were ineffective because they failed to file "any motions to obtain discovery of the alleged victim's counseling records or to seek an independent evaluation to assure they had all necessary information to impeach the victim's credibility at trial and to present arguments for a new trial," respectively. Second, Davis asserts that both Sedgwick and Allen were ineffective for failing to argue that the State violated K.S.A. 22-3433(a)(8) when the State provided Davis with a copy of L.C.'s filmed sexual abuse evaluation interview without also providing a transcript of the interview. Third, Davis asserts that Allen was ineffective for failing to argue that the State hid evidence that L.C. had been in therapy before the alleged sodomy occurred in violation of *Brady*.

Additionally, in his appeal, Davis argues that his appellate attorney, Minihan, provided ineffective assistance of counsel. Davis argues that Minihan was ineffective as appellate counsel because although Minihan argued that Sedgwick provided ineffective assistance of counsel, he failed to raise the specific claims of ineffective assistance of counsel that Davis now makes in this appeal.

Based on the preceding violations, Davis asks this court to remand his case to the trial court for a full evidentiary hearing. Nevertheless, as detailed below, there are several reasons why Davis' arguments fall short on appeal.

*Is Davis Barred as a Matter of Res Judicata From Relitigating Arguments That Should Have Been Raised in His Direct Appeal?*

First, the doctrine of res judicata bars Davis from arguing in this appeal that Sedgwick provided ineffective assistance of counsel.

6

"The doctrine of res judicata provides that 'where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived.'" *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 (2014) (quoting *State v. Neer,* 247 Kan. 137, 140-41, 795 P.2d 362 [1990]). "[R]es judicata consists of four elements: '"[1] same claim; [2] same parties; [3] claims were or could have been raised; and [4] a final judgment on the merits."'"*Kingsley*, 299 Kan. at 901 (quoting *State v. Martin,* 294 Kan. 638, 641, 279 P.3d 704 [2012]). The essence of the doctrine of res judicata is that issues "'once finally determined . . . cannot afterwards be litigated.'" *Kingsley*, 299 Kan. at 901 (quoting *Jayhawk Equipment Co. v. Mentzer,* 191 Kan. 57, 61, 379 P.2d 342 [1963]).

On appeal, Davis argues that Sedgwick was ineffective because he failed to move to obtain discovery of L.C.'s therapy records or to request that L.C. undergo an independent psychiatric evaluation to ensure that he had all pertinent information to impeach L.C.'s credibility at trial. Davis additionally argues that Sedgwick was ineffective because he failed to argue that the State violated K.S.A. 22-3433(a)(8) when the State failed to provide him with a transcript of L.C.'s sexual abuse evaluation interview. As previously noted, however, Davis argued in his direct appeal that Sedgwick had provided him with ineffective assistance of counsel.

Again, before sentencing, Davis filed a pro se motion for a new trial. In this motion, Davis argued that he was entitled to a new trial because Sedgwick had provided him with ineffective assistance of counsel. After he filed this motion, the trial court appointed Allen as new counsel and held a full evidentiary hearing in which Davis and Sedgwick testified. The trial court denied Davis' motion for new trial. Then, Davis appealed to this court. In his direct appeal, Davis alleged that Sedgwick was ineffective for failing to subpoena certain persons as witnesses, for failing to argue that his jail wrist band should have been removed during his trial, for failing to obtain his preliminary

transcript in a timely manner, and for failing to give him copies of discovery. This court ultimately affirmed the trial court because nothing supported Davis' claims that Sedgwick was ineffective; thus, Davis was not entitled to a new trial. See *Davis*, 2012 WL 2148167, at *4-7.

Based on this evidence, Davis is clearly barred under the doctrine of res judicata from raising arguments that Sedgwick had provided him with ineffective assistance of trial counsel. In this appeal, Davis is raising the same claim that he raised in his direct appeal—*i.e.*, that Sedgwick had provided him with ineffective assistance of counsel. The parties in both appeals are the same. The arguments Davis makes regarding why Sedgwick had provided him with ineffective assistance of counsel in this appeal could have been raised in his direct appeal. Moreover, Davis' direct appeal was a final judgment on the merits. As a result, Davis has already litigated whether Sedgwick had provided him with ineffective assistance of counsel and is barred as a matter of res judicata from raising these arguments in this appeal.

*Can Davis Raise Certain Arguments for the First Time on Appeal?*

Issues not raised before the trial court cannot be raised for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Moreover, constitutional grounds for reversal are not properly before an appellate court for the first time on appeal. *State v. Coman,* 294 Kan. 84, 89, 273 P.3d 701 (2012). There are, however, exceptions to this general rule. Those exceptions include when (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Nevertheless, under Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot.

41), an appellant must explain why new issues should be considered for the first time on appeal given that those issues were not raised below. An appellant who fails to include this explanation risks a ruling that the issue is not properly before this court, resulting in the issue being deemed waived and abandoned. *State v. Williams,* 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

In this case, Davis raises all but two of his arguments for the first time on appeal. In Davis' K.S.A. 60-1507 motion, Davis never alleged that Sedgwick provided ineffective assistance of counsel. Instead, Davis only alleged that Allen and Minihan provided ineffective assistance of counsel. Thus, in addition to being barred as a matter of res judicata, Davis is raising the argument that Sedgwick was ineffective for the first time on appeal. Moreover, in his K.S.A. 60-1507 motion, Davis never argued that (1) Allen failed to assert that the State violated K.S.A. 22-3433(a)(8) by not providing him with a transcript of L.C.'s sexual abuse evaluation interview; or (2) Allen was ineffective for failing to raise the alleged *Brady* violation before the trial court.

Although Davis raises these arguments for the first time on appeal, Davis never explains why this court should consider these arguments for the first time on appeal. Thus, Davis has failed to comply with Kansas Supreme Court Rule 6.02(a)(5). Because Davis has failed to explain why this court should consider his arguments in violation of Kansas Supreme Court Rule 6.02(a)(5), we decline to address these arguments for the first time on appeal.

As a result, Davis has properly preserved only two arguments on appeal. First, Davis has preserved his argument that Allen was ineffective while arguing for a new trial because he failed to request L.C.'s therapy records or request that L.C. undergo an independent psychiatric evaluation. Second, Davis has preserved his argument that Minihan was ineffective as his appellate counsel.

9

*Did Davis' Properly Preserved Arguments Fail?*

Davis' remaining two arguments fail because Davis cannot establish that either Allen's performance or Minihan's performance was deficient under the first prong of the ineffective assistance of counsel test.

First, the record on appeal does not support Davis' contention that Allen was ineffective for failing to request L.C.'s therapy records or request that L.C. undergo an independent psychiatric evaluation. Essentially, Davis argues that Allen should have taken these actions because he believes that L.C. is (1) mentally ill and (2) "mentally slow." Davis further contends that taking such actions would have proven that L.C. is mentally ill and mentally slow, which would have hurt L.C.'s credibility as a witness and resulted in the trial court granting him a new trial. Nevertheless, nothing outside Davis' own assertions supports that L.C. was mentally ill or mentally slow. Accordingly, Davis has failed to demonstrate that Allen was ineffective because the record on appeal does not support that there was a valid basis for requesting L.C.'s therapy records or for requesting that L.C. undergo an independent psychiatric evaluation.

Regarding Davis' contention that L.C. is mentally ill, Davis' entire argument is based upon a statement that L.C. made at trial. At trial, when the State asked L.C. if she had spoken to anyone other than the police about the sodomy, L.C. responded: "Well, I was already—I was already in therapy then. I mean, not—well, I was—I already had a therapist in Olathe that I came to see at the KVC building there. So I told her." Thus, from this statement, Davis has concluded L.C. is mentally ill because she is in therapy.

Davis' conclusion, however, is a logical non sequitur. Davis' argument can be broken down as follows: (1) All mentally ill people are in therapy; (2) L.C. is in therapy; (3) therefore, L.C. is mentally ill. Regardless of the validity of the premise that all mentally ill people are in therapy, Davis has concluded that all people in therapy are

mentally ill without any foundation for this conclusion. Furthermore, even if L.C. was mentally ill, it does not follow that her mental illness affected her veracity.

Regarding Davis' contention that L.C. is "mentally slow," Davis' entire argument is based on a statement that L.C.'s foster mother, Brown, allegedly made to the police. At Davis' hearing on his motion for a new trial, both he and Sedgwick testified that Brown had told the police that L.C. was "mentally challenged." The police report containing Brown's alleged statement is not included on the record on appeal. Nothing outside Davis' testimony and Sedgwick's testimony supports that L.C. suffered from some sort of mental handicap. In a criminal case, the party claiming error has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate court will not find error. See *State v. Bridges*, 297 Kan. 989, 1001, 306 P.3d 244 (2013). Moreover, the evidence included in the record on appeal supports that L.C. did not suffer from a mental handicap that hindered her ability to understand or truthfully testify. During Davis' preliminary hearing and trial, L.C. had no difficulties understanding the State's or Davis' questions and L.C.'s testimony about being sodomized by Davis was clear and consistent.

Under *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979), a trial judge has the discretion to order psychiatric examination of a witness in a sex crime case if the defendant presents *compelling reasons* for such an examination. In determining if such compelling reasons exist, the trial judge should consider: "(1) whether the victim demonstrates mental instability, (2) whether the victim demonstrates a lack of veracity, (3) whether similar charges by the victim against others are proven to be false, (4) whether the defendant's motion for a psychological evaluation of the victim appeared to be a fishing expedition, (5) whether anything unusual results following the questioning of the victims understanding of telling the truth, and (6) whether there are any other reasons why the victim should be evaluated." *State v. Price*, 275 Kan. 78, 84, 61 P.3d 676 (2003). In this case, nothing in the record on appeal supports that L.C. was mentally unstable,

11

lacked veracity, had made similar charges in the past, or had made inconsistent statements. If Allen had requested L.C.'s therapy records or requested that L.C. undergo an independent psychiatric evaluation, his requests would have been nothing more than a fishing expedition.

Consequently, Davis has clearly failed to provide this court with compelling reasons as to why he would have been entitled to L.C.'s therapy records or an independent psychiatric evaluation of L.C. As a result, Davis cannot prove that Allen was ineffective for failing to request L.C.'s therapy records or request that L.C. undergo an independent psychiatric evaluation. Moreover, even if Allen erred by not making these requests, Davis cannot establish that but for Allen's error, the trial court would have granted him a new trial. As the State points out in its brief, under the unlikely assumption the trial court would have even granted these requests, "pursuing information about the victim's disclosure to her therapist may have only strengthened her credibility and provided one more witness to support her story."

Second, Davis' contention that Minihan provided ineffective assistance of appellate counsel is conclusory. In his brief, Davis makes the following statements as to why Minihan was ineffective:

> "Although ineffective assistance of counsel was raised by the Appellate defender on his direct appeal, said attorney failed to raise any of the specific claims and issues raised by the Appellant in his petition for 60-1507 relief. The issues raised here are significant violations of the Appellant's right to effective assistance of counsel and due process."

By making this statement, it seems that Davis is attempting to incorporate the arguments he made in his K.S.A. 60-1507 motion by reference. Yet, Davis has not provided this court with any evidentiary basis for his assertion that Minihan's representation was so deficient as to violate his right to effective assistance of counsel.

12

In a similar case, *Gertschitz v. State*, No. 105, 582,2012 WL 686824, at *3 (Kan. App. 2012) (unpublished opinion), this court held that Gertschitz' argument that he was entitled to an evidentiary hearing on his K.S.A. 60-1507 motion was conclusory because Gertschitz did not include the merits of his argument in his brief. Instead, Gertschitz attempted to incorporate the arguments in his K.S.A. 60-1507 motion by reference. As in *Gertschitz*, Davis cannot establish that he was entitled to an evidentiary hearing based on his allegation that Minihan provided ineffective assistance of appellate counsel because his argument on appeal is conclusory. Therefore, the trial court did not err by summarily denying Davis' K.S.A. 60-1507 motion.

*Did Davis' Improperly Preserved Arguments Fail on the Merits?*

As a final note, it is worth mentioning that even if Davis had properly preserved his arguments that Allen was ineffective for failing to argue that the State violated K.S.A. 22-3433(a)(8) or that the State committed a *Brady* violation, his arguments would still fail on the merits. Again, Davis asserts that Allen was ineffective for failing to argue before the trial court that the State violated K.S.A. 22-3433(a)(8) when it provided him with a video copy of L.C.'s sexual abuse evaluation interview without also providing a transcript of this interview. K.S.A. 22-3433(a)(8) states:

> "In any criminal proceeding in which *a child less than 13 years of age is alleged to be a victim of a crime*, a recording of an oral statement of the child, made before the proceeding began is admissible in evidence if: . . . a copy of a written transcript is provided to the parties." (Emphasis added.)

In this case, Davis sodomized L.C. when she was 16 years old. Thus, Allen was not ineffective for failing to raise this issue because K.S.A. 22-3433(a)(8) was inapplicable.

Regarding the alleged *Brady* violation, nothing in the record on appeal indicates that the State was concealing the fact that L.C. had been in therapy before she was sodomized by Davis. It seems that L.C. revealed this information for the first time at trial. Consequently, Davis' argument must fail because Allen could not be ineffective for failing to raise a *Brady* violation that did not exist. Moreover, even if there was a *Brady* violation, Davis cannot establish that he was prejudiced by Allen's failure to raise this violation. In his brief, Davis never explains how evidence that L.C. had been in therapy was exculpatory or material to his case. When the State's withholding of evidence was not willful, a defendant should be granted a new trial only if the evidence withheld was (1) suppressed by the prosecution, (2) clearly exculpatory, and (3) so material that its omission was clearly prejudicial. See *Wilkins v. State*, 286 Kan. 971, 989, 190 P.3d 957 (2008). Since Davis has failed to explain how the therapy evidence was exculpatory or material, even if there was a *Brady* violation, Davis cannot prove that he was prejudiced by Allen's error because he has failed to establish that he was entitled to a new trial.

*Conclusion*

The trial court did not err when it summarily denied Davis' K.S.A. 60-1507 motion. On appeal, Davis makes several arguments why his trial counsel, sentencing counsel, and appellate counsel were ineffective. Upon examination, however, it is clear that Davis' arguments must fail because his arguments are barred under the doctrine of res judicata, not properly preserved, or not supported by the record on appeal. Accordingly, we affirm.

Affirmed.